

**SIGNED this 21st day of July, 2017**

_/s/ Nicholas W. Whittenburg_
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **David Harlan Eicher** | ) | No. 1:12-bk-10283-NWW |
| **Joyce Elaine Eicher** | ) | Chapter 7 |
| | ) | |
| **Debtors** | ) | |
| | ) | |
| **Richard P. Jahn, Jr., Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Adv. No. 1:17-ap-01001-NWW |
| | ) | |
| **Christopher L. Candler** | ) | |
| **Trust Federal Credit Union** | ) | |
| **Weiss Cummins, PLLC** | ) | |
| | ) | |
| **Defendants** | ) | |

# M E M O R A N D U M

This adversary proceeding is before the court on the Motion for Partial Summary

Judgment filed by the plaintiff and on Defendants Candler and Trust Federal Credit

Union's Motion for Summary Judgment, both of which were filed on June 30, 2017.[1] Having considered the motions, supporting and opposing briefs, and statements of undisputed material facts and responses, the court will grant the defendants' motion in part and deny the plaintiff's motion.

## I. Factual Background and Procedural History

On September 3, 2002, debtors David Harlan Eicher and Joyce Elaine Eicher purchased lots 187-189 of the Lakewood Village subdivision in Rhea County, Tennessee, having the address 250 Dogwood Court, Spring City, Tennessee, from Jim and Carla Metzger. The purchase was financed by Countrywide Home Loans, Inc. (later EverBank), which received a deed of trust to secure repayment of the loan. The property is located on an inlet of Watts Bar Lake, with the lake on one side and Dogwood Court on the other. In 2003, the debtors built a boathouse off of lot 187, which they accessed via a road or driveway that runs along the lake starting at what the plaintiff calls Cove Road.

On June 23, 2004, the debtors purchased lot 186 of Lakewood Village subdivision, which has the address 110 Dogwood Court, from Linda Hurt, f/k/a Linda Hudson, and John Hurt. That lot adjoins 250 Dogwood Court, specifically, subdivision lot 187. In March 2005, the debtors conveyed the property to themselves as trustees of The David H. Eicher Revocable Living Trust and The Joyce E. Eicher Revocable Living Trust. The debtors then built a house on lot 186 in 2005 and 2006, completing it toward the end of

---

[1] This memorandum will sometimes refer to the defendant movants for summary judgment as the "defendants," even though defendant Weiss Cummins, PLLC, did not join in the motion.

2006. Utility lines to the house were installed under the lakefront driveway, and the debtors continuously used the driveway to access the house. On October 30, 2008, the Eicher trusts executed a deed of trust in favor of Sidney W. Breaux of Weiss Spicer Cash, PLLC, as trustee for Southeast Bank & Trust. To assist the reader, below is the sketch of the area long the lake inlet that was attached to the complaint initiating this proceeding:



On January 18, 2012, the debtors filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On April 9, 2014, the court entered an agreed order signed by counsel for the debtors, for EverBank, and for the chapter 13 trustee, which afforded the debtors to February 7, 2014, within which to bring the mortgage current, failing which, "EverBank shall be relieved from the Automatic Stay provisions of 11 U.S.C. 362(a) forthwith, and may proceed with any state remedies as to the real property commonly known as 250 Dogwood Court, Spring City, Tennessee 37381." The debtors did not bring the account current and, on February 12, 2015, the property was sold at foreclosure and transferred by the trustee named in the deed of trust to Federal National Mortgage Association.[2] On August 18, 2015, FNMA sold the property to defendant Christopher L. Candler, with the purchase financed by defendant Trust Federal Credit Union; defendant Weiss Cummins, PLLC (formerly Weiss Spicer Cash, PLLC), is the trustee under the deed of trust. The bankruptcy estate retains ownership of 110 Dogwood Court. Beginning in December 2015, Mr. Candler has taken various actions to block access to 110 Dogwood Court via the lakefront driveway. On September 22, 2016, the debtors' chapter 13 case was converted to a case under chapter 7 of the Bankruptcy Code, and the plaintiff was appointed chapter 7 trustee. On January 23, 2017, the plaintiff initiated this adversary proceeding, seeking various remedies primarily for Mr. Candler's interference with what the plaintiff asserts is an implied ease-

---

[2] The plaintiff does not contest the validity of the foreclosure in compliance with Tennessee law. Indeed, he relies on the validity of the foreclosure in arguing that there was a separation of title at the time and on account of the foreclosure.

-4-

ment or easement by necessity to use the lakefront driveway, alleging that it is not feasible to build a driveway to the house on lot 186 from Dogwood Court. The plaintiff also sought injunctive relief and, after conducting an evidentiary hearing on February 13, 2017, the court entered an order denying preliminary injunctive relief, primarily because the plaintiff has an adequate remedy at law.

On May 15, 2017, the court granted Mr. Candler's motion to compel the trustee to join as defendants Trust Federal Credit Union and Weiss Cummins, which are the lender and deed of trust trustee on 250 Dogwood Court. Ten days later, the plaintiff filed an amended complaint to join the additional defendants, which also changed some of the original complaint's factual allegations. Count I of the amended complaint asserts that Mr. Candler violated the automatic stay by interfering with the easement across his property and by sawing off the stairs and the boathouse ramp attached to the house on 110 Dogwood Court. Count II seeks to reform the "relevant deeds and Deeds of Trust" to reflect an easement in favor of 110 Dogwood Court for the driveway over 250 Dogwood Court and for utility lines under the driveway or, alternatively, an order declaring an implied easement, common-law easement by necessity, or statutory easement by necessity pursuant to section 54-14-102 of the Tennessee Code Annotated. Count III seeks an injunction prohibiting Mr. Candler's interference with the alleged easement. Count IV seeks damages for conversion of personal property located on the boathouse as a result of Mr. Candler's interference with the alleged easement, and damages for the sawing off of the stairs and boathouse ramp.[3]

---

[3] The plaintiff has initiated a separate adversary proceeding against Mr. Candler
(continued...)

Also on February 15, 2017, the court granted Mr. Candler's motion for leave to amend his answer to assert a counterclaim against the plaintiff, and also against Southeast Bank & Trust and Weiss Spicer Cash, which are the lender and deed of trust trustee on 110 Dogwood Court. The counterclaim asserts that the plaintiff or his predecessors in interest have constructed a retaining wall, septic tank system, satellite disk, private utilities, and other improvements within five feet of the property line between 110 and 250 Dogwood Lane or perhaps even across the line on Mr. Candler's property, in violation of the Lakewood Village restrictive covenants. The counterclaim seeks injunctive relief or, alternatively, an award of damages.

The plaintiff seeks entry of a summary judgment declaring that the bankruptcy estate includes an easement by implication for egress and ingress and for utility usage for the benefit of 110 Dogwood Court, the dominant tenement, over 250 Dogwood Court, the servient tenement, and enjoining Mr. Candler from interfering with the easement. He does not seek summary judgment establishing a statutory easement by necessity under T.C.A. 54-14-101 *et. seq.* On the other hand, the defendants seek entry of a summary judgment declaring that no easement by implication exists over 250 Dogwood Court or that any such easement was terminated upon the foreclosure on the property or was abandoned by the bankruptcy estate. The defendants contend that the plaintiff intends to abandon his claim to a statutory easement by necessity. However, to

---

[3] (...continued)
(*Jahn v. Candler*, Adv. No. 1:17-ap-01014-NWW) for allegedly taking control of the boathouse and interfering with the use of the boathouse.

date the plaintiff has not amended his complaint or otherwise signaled his intent to do so.

## II. Summary Judgment Standard

A party is entitled to summary judgment if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court will construe all reasonable inferences in favor of the non-moving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the evidence would permit a reasonable jury to return a verdict for the non-moving party, a genuine issue of material fact exists and summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the face of a summary judgment motion, the nonmoving party may not rest on its pleadings, but must come forward with some probative evidence to support its claim. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (holding that nonmoving party must present "some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial"). In the words of Rule 56(c)(1) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

## III. Discussion

### A. Implied Easements in Tennessee

The parties agree that the determination of whether an easement exists in this case requires application of Tennessee law. "In Tennessee, an easement may be created in several ways, including: (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain." *Ingram v. Wasson*, 379 S.W.3d 227, 238 (Tenn. Ct. App. 2011). Resolution of the pending motions requires the court to delve into Tennessee law regarding the creation of easements by implication.

There are two types of implied easement. The first, which the Restatement of Property calls a "servitude implied from prior use," exists when, "prior to a conveyance severing the ownership of land into two or more parts, a use was made of one part for the benefit of another," when the circumstances show that "the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use." *Id.* at 238 (quoting RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.12 (2008) [hereinafter cited as RESTATEMENT). "The Restatement explains that the rule regarding easements implied from prior use is based on the assumption that people intend to buy and sell land with the existing access arrangements, and it furthers the policy of protecting the reasonable expectations and the intent of parties to such transactions." *Id.* (citing RESTATEMENT § 2.12 cmt. (a)). The requirements to establish this type of easement are that (1) there has been a separation of title, (2) prior to the separation of title, there was such a long established and obvious use as to show that the use was intended to be permanent, and (3) the easement is essential to the beneficial enjoyment of the

land. *Douglas v. Cornwell*, No. E2016-00124-COA-R3-CV, 2016 WL 5416338, at *5 (Tenn. Ct. App. Sept. 28, 2016) (citing *Newman v. Woodard*, 288 S.W.3d 862, 866 (Tenn. Ct. App. 2008)); *Cellco P'ship v. Shelby Cty.*, 172 S.W.3d 574, 589 (Tenn. Ct. App. 2005). "[T]he law does not favor implied easements, and 'the courts of [Tennessee] have expressed a policy in favor of restricting the use of the doctrine.'" *Douglas v. Cornwell*, 2016 WL 5416338, at *5 (quoting *Cellco P'ship*, 172 S.W.3d at 589); *see Cole v. Dych*, 535 S.W.2d 315, 318 (Tenn. 1976). Accordingly, "[t]he requirements for the establishment of an easement by implication must be strictly adhered to," so "[t]he party seeking to establish an easement by implication . . . bears the burden of showing the existence of all the essential elements." *Cellco P'ship*, 172 S.W.3d at 589, 590 (quoting 28A C.J.S. *Easements* § 63 (1996) (citing *Line v. Miller*, 309 S.W.2d 376, 377 (Tenn. Ct. App. 1957)). However, to satisfy the requirement that the use of the easement be "essential" requires a showing only that the use is "reasonably necessary for the enjoyment of the dominant tenement." *Fowler v. Wilbanks*, 48 S.W.3d 738, 741 (Tenn. Ct. App. 2000).

The second type of implied easement, a common law way of necessity, which the Restatement calls a "servitude created by necessity," exists when a conveyance would otherwise deprive the transferee or transferor of rights necessary to the reasonable enjoyment of the land transferred or retained. *Ingram v. Wasson*, 379 S.W.3d at 239-40 (quoting RESTATEMENT § 2.15). For an easement to be created by necessity, it is irrelevant whether the transferee made use of the means of access prior to acquiring the property. *Id.* As the Tennessee Court of Appeals has explained:

> "The implication of an easement of necessity is an application of the rule that wherever one conveys property he also conveys whatever is necessary for its beneficial use and enjoyment, and retains whatever is necessary for the use of the land retained." This Court has recognized that access to one's property is so essential to the full enjoyment of that property that "a clear presumption [arises] in favor [of the grantee] as the owner of said remaining tract of land . . . that such easement was of such necessity that an implied reservation thereof must be presumed to have been within the contemplation of the parties at the time of said conveyance."

*Cellco P'ship*, 172 S.W.3d at 591-92 (quoting 28A C.J.S. *Easements* § 91 (1996));

*Harris v. Gray*, 188 S.W.2d 933, 935 (Tenn. Ct. App. 1945). The prerequisites to the creation of an easement by necessity are that: "1) the titles to the two tracts in question must have been held by one person; 2) the unity of title must have been severed by a conveyance of one of the tracts; 3) the easement must be necessary in order for the owner of the dominant tenement to use his land with the necessity existing both at the time of the severance of title and the time of exercise of the easement." *Cellco P'ship*, 172 S.W.3d at 592 (citations omitted).

"As can be seen, there is considerable overlap between an easement implied from prior use and an easement created by necessity. Both are implied, both arise from a conveyance, both hinge on a finding of necessity." *Ingram*, 379 S.W.3d at 240. Additionally, each type of implied easement requires that the title to the two tracts in question be held by the same owner and that the title be severed with the conveyance of one of the tracts. The specified elements are merely the facts or circumstances intended to guide the trier of fact in determining whether there is an implication that the transferor intended to convey or retain whatever is necessary for the use and enjoyment of each of the tracts at issue.

**B. No Implied Easement Arose upon the Foreclosure on 250 Dogwood Court.**

The moving parties contend that title to 250 and 110 Dogwood Court was severed upon the delivery of the trustee's deed to FNMA on February 12, 2015, following the foreclosure pursuant to EverBank's deed of trust. The court disagrees.

Tennessee is a "title theory" state. When a borrower obtains a loan secured by real estate, the trustee named in the deed of trust holds legal title to the property for the benefit of the lender. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014); *accord, e.g.*, *Harris v. Buchignani*, 285 S.W.2d 108, 111-12 (Tenn. 1955). "The borrower must satisfy her mortgage debt in order to obtain title." *Thompson v. Bank of Am., N.A.*, 773 F.3d at 750. The debtors, with the execution of the deed of trust dated September 3, 2002, irrevocably granted and conveyed to the trustee named in the deed of trust, in trust for the benefit of the secured lender, fee simple title to 250 Dogwood Court. While the debtors held a right to redeem the collateral by satisfying the debt secured by 250 Dogwood Court, they did not hold legal title to that property. The trustee under the deed of trust encumbering 250 Dogwood Court did not also hold title to 110 Dogwood Court as the deed of trust did not encumber that property. Accordingly, there was no unity of ownership in each of the tracts at issue that was severed by the foreclosure of 250 Dogwood Court. It was the deed of trust trustee, not the debtors or the bankruptcy estate, who held legal title to and transferred 250 Dogwood Court pursuant to the power of sale provided in the deed of trust. As discussed below, when the deed of trust trustee conveyed his title to 250 Dogwood Court to FNMA, he transferred the title as it existed when the deed of trust was executed, divested of all encumbrances or interests arising subsequent to the deed of trust. The plaintiff has pointed to no fact in

-11-

the record suggesting that the deed of trust trustee, acting on behalf of EverBank, intended to diminish the value of the property being foreclosed upon by burdening it with an easement for the benefit of property in which the trustee and EverBank held no interest. The circumstances of the transfer of 250 Dogwood Court to FNMA simply do not give rise to an implication that an easement for the benefit of 110 Dogwood Court was intended by the parties to the conveyance. The court holds that foreclosure under the deed of trust encumbering only 250 Dogwood Court did not create an easement by implication. The plaintiff has not provided any authority holding that an implied easement may be created upon the foreclosure of a purported servient tenement and the court has found none.

There is judicial authority outside of Tennessee supporting the court's conclusion that an implied easement does not arise upon the foreclosure under a mortgage that does not encumber both the dominant and servient tracts.  The case of *Leonard v. Bailwitz*, 166 A.2d 451 (Conn. 1960), applied the law of Connecticut, which is also a "title theory" state. There, the plaintiff's property became landlocked when there was a foreclosure on two of three neighboring lots. The plaintiff argued that an easement by necessity arose upon the foreclosure of the two lots. The court denied an easement by necessity, reasoning that the mortgagee of the two lots acquired legal title prior to the plaintiff's property becoming landlocked and, therefore, any unity of ownership was severed upon the execution of the mortgage. *Id.* at 454-455. The only result of the foreclosure was to "effect a change in the title held by the mortgagee from a qualified one to an absolute one" and the buyer at foreclosure acquired "such title as the mortgagor had the power to mortgage at the time the mortgage was given." *Id.* This analysis

supports the conclusion that no implied easement can arise at the time of a foreclosure because the mortgage confers on the mortgagee legal title to the encumbered property and the mortgagee has the right to convey such legal title as it existed at the time the mortgage was made rather than the title as it existed at the time of the foreclosure. *See id.* at 455 ("Whatever title the defendants have acquired in their properties derives from the legal relationships which ensued from the execution of the mortgage by [the mortgagor] and its subsequent foreclosure.").

The authorities supporting the defendants' argument that the foreclosure terminates an easement created after the deed of trust lends further support for the court's conclusion that no implied easement was created upon the foreclosure of 250 Dogwood Court.[4] As the plaintiff recognizes, "Tennessee and other states have a general rule that foreclosure will extinguish liens of record and other interests, including easements that are created after the deed of trust is recorded." (Trustee's Br. in Supp. of Mot. for Partial Summ. J., at 10.) *Helmboldt v. Jugan*, No. E2015-01664-COA-R3-CV, 2016 WL 4036417, at *3 (Tenn. Ct. App. July 25, 2016); *see Minton v. Long*, 19 S.W.3d 231, 234 (Tenn. Ct. App. 1999); *cf. Gilliard v. JP Morgan Chase Bank, N.A.*, No. 3:12-CV-236, 2012 WL 6139922, at *5 (E.D. Tenn. Dec. 11, 2012). The courts reason that it has been "well-settled for many years . . . that 'the purchaser at a regular foreclosure sale "takes the mortgagor's title divested of all incumbrances made since the creation of the power"' and that it is also settled that "the same rule applies when the post-mortgage encumbrance is an easement." *Helmboldt*, 2016 WL 4036417, at *3 (quoting "*Home Owners'*

---

[4] In light of the court's holding that no easement by implication arose, the court need not address the defendants' contention that any easement was abandoned.

*Loan Corp. v. Guaranty Title Trust Co.*, 76 S.W.2d 109, 111 (Tenn. 1934); *Minton v. Long*, 19 S.W.3d at 234). Although the court has found no Tennessee authority applying this rule to an implied easement created after a deed of trust or mortgage, at least one court has held that such an easement is extinguished by the foreclosure of an antecedent mortgage. *Bush v. Duff*, 754 P.2d 159, 164 (Wyo. 1991), *overruled on other grounds by Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 290 (Wyo. 1991). The parties do not dispute that the implied easement was created, if at all, upon the foreclosure by EverBank on 250 Dogwood Court with the delivery of the trustee's deed to FNMA. Necessarily, the deed of trust foreclosed upon antedated the conveyance that created any implied easement. Thus, the foreclosure, to the extent it created the easement, simultaneously extinguished it by operation of law.[5]

---

[5] Even if the court were to conclude that an easement arose at the time of the foreclosure, the only argument that the plaintiff makes that such an easement was not terminated by the same event is that the agreed order granting relief from the automatic stay did not specifically grant EverBank the right to extinguish the post-deed-of-trust easement appurtenant to 110 Dogwood Court. The court disagrees. The bankruptcy estate consists of all the debtor's legal and equitable interests in property as of the filing of the bankruptcy petition. 11 U.S.C. § 541(a). Courts should look to state law to determine the property rights included in a debtor's bankruptcy estate. *Butner v. United States*, 440 U.S. 48, 55 (1979). Thus, 250 Dogwood Court came into the debtors' bankruptcy estate subject to EverBank's deed of trust and all the rights afforded the lender by the deed of trust and applicable Tennessee law. The agreed order relieved EverBank of the automatic stay prescribed by section 362(a) of the Bankruptcy Code and afforded EverBank the right to "proceed with any state remedies as to . . . 250 Dogwood Court." Accordingly, foreclosure under the deed of trust encumbering this property did not violate the automatic stay. One of the consequences of EverBank's foreclosure under Tennessee law is to extinguish any implied easement over the servient estate arising after the date of the deed of trust. EverBank did not take any separate action to terminate any easement, but merely exercised the right to foreclose pursuant to the agreed order, which by operation of state law terminated any easement.

To accept the plaintiff's position by holding that an implied easement was both created by and survived the foreclosure of 250 Dogwood Court would be tantamount to elevating implied easements, which are not favored, over express easements, junior mortgages, or other interests in real property created after a senior deed of trust. Assume the debtors, subsequent to the execution of the deed of trust encumbering 250 Dogwood Court, unilaterally modified the deed to this property to create an express easement over the property for the benefit of 110 Dogwood Court. Absent the consent of the mortgagee under the deed of trust, there can be no dispute that such an express easement would be subordinate to the lien afforded by the deed of trust. The foreclosure under the deed of trust would extinguish the express easement. An easement by implication can fare no better. The plaintiff would have this court hold that a foreclosure that would have extinguished any subordinate express easement or other subordinate interest, instead created an implied easement that survived foreclosure. This the court will not do. Such a result is illogical and would place in jeopardy the rights of mortgage lenders by allowing the unilateral actions of mortgagors to diminish the collateral given for loans.

### IV. Conclusion

The court holds that, as a matter of law, no implied easement arose by virtue of the foreclosure on 250 Dogwood Court and, alternatively, that any such easement that may have been created was extinguished by such foreclosure. Accordingly, the defendants are entitled to partial summary judgment. As to Count I, because Mr. Candler could not have interfered with or exercised control over an implied easement over 250

Dogwood Court that did not exist or was extinquished, to that extent the defendants' motion for summary judgment is granted. As to Count II, the defendants are entitled to partial summary judgment to the extent the plaintiff seeks a declaration that the bankruptcy estate holds an implied easement and seeks reformation of any deeds and deeds of trust to memorialize such an easement. The plaintiff's request for an injunction prohibiting interference with any implied easement in Count III must also fail.

Surviving the court's ruling are Count I to the extent that it alleges that Mr. Candler's sawing off the stairs and the boathouse ramp attached to the house on 110 Dogwood Court constitute a violation of the automatic stay, Count II to the extent the the plaintiff claims a right to a statutory easement pursuant to section 54-14-102 of the Tennessee Code Annotated, as he has not formally withdrawn the claim and the defendants have not sought summary judgment respecting such claim, and Count IV. Also surviving the court's ruling is Mr. Candler's counterclaim against the plaintiff, Southeast Bank & Trust, and Weiss Spicer Cash. Trial will proceed on the surviving claims as scheduled on August 15, 2017.

For the foregoing reasons, the court will enter an order granting the defendants judgment as a matter of law in part, dismissing Counts I and II in part, and dismissing Count III in its entirety. The order will also deny the plaintiff's motion for summary judgment.

###