**SIGNED this 29th day of August, 2017**

/s/ Nicholas W Whittenburg
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **David Harlan Eicher** | ) | No. 1:12-bk-10283-NWW |
| **Joyce Elaine Eicher** | ) | Chapter 7 |
| | ) | |
| **Debtors** | ) | |
| | ) | |
| **Richard P. Jahn, Jr., Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Adv. No. 1:17-ap-01001-NWW |
| | ) | |
| **Christopher L. Candler** | ) | |
| **Trust Federal Credit Union** | ) | |
| **Weiss Cummins, PLLC** | ) | |
| | ) | |
| **Defendants** | ) | |

# M E M O R A N D U M

This adversary proceeding is before the court on the Motion to Reconsider filed by the plaintiff on August 4, 2017, which asks the court to alter or amend the order en-

tered on July 21, 2017.[1] That order denied the plaintiff's motion for summary judgment and granted in part the motion for summary judgment filed by defendants Christopher L. Candler and Trust Federal Credit Union. Although the plaintiff does not cite any authority for his motion, the court assumes that he is proceeding under Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59. The Bankruptcy Appellate Panel for the Sixth Circuit has summarized this circuit's standards for resolving a motion to alter or amend as follows:

> Rule 59(e) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 9023, allows a court to consider a "motion to alter or amend a judgment." The Sixth Circuit Court of Appeals has held that "a court should grant such a motion only 'if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.'" [sic] The rule "is not designed to give an unhappy litigant an opportunity to relitigate matters already decided, nor is it a substitute for appeal." The [movant bears] the burden of showing "that alteration or amendment of the original judgment is appropriate."

*Barclay v. Reimer & Lorber Co. (In re Barclay)*, 337 B.R. 728, 2006 WL 238139, at *7 (B.A.P. 6th Cir. 2006) (citations omitted); *accord, e.g., In re Target Graphics, Inc.*, 372 B.R. 866, 875 (E.D. Tenn. 2007). The plaintiff has not produced any newly discovered evidence or suggested that there has been an intervening change in controlling law. As discussed below, the court does not believe that it committed an error of law requiring

---

[1] SouthEast Bank, a defendant vis-à-vis the defendants' counterclaim, joined in the plaintiff's motion to reconsider and filed a brief in support thereof. As it did not itself file a motion for summary judgment, join in the plaintiff's motion for partial summary judgment, respond to the defendants' motion for summary judgment or assert the existence of an implied easement in its answer to the counterclaim, it is questionable whether SouthEast Bank may now seek reconsideration of the court's order of July 21, 2017. Nevertheless, the court considered SouthEast Bank's arguments, as they were essentially the same as the arguments made by the plaintiff in his Motion to Reconsider.

an alteration or amendment of its order or that the relief sought is necessary to prevent manifest injustice.

In the brief in support of his Motion to Reconsider, the plaintiff does not dispute the facts found by the court in the memorandum opinion filed contemporaneously with the court's July 21 order, which is available at 2017 WL 3126920. Nor does he dispute the summary of Tennessee law concerning implied easements. In the interest of brevity the court will not repeat here those findings of fact or statements of law except as necessary to explain the court's decision.

The plaintiff does, of course, take issue with the court's application of the law to the undisputed facts. In its earlier opinion the court concluded that there was no unity of ownership in 250 and 110 Dogwood Court that was severed upon foreclosure of the former and, accordingly, no implied easement from prior use or easement of necessity for the benefit of 110 Dogwood Court resulted from the foreclosure. The plaintiff argues that there was a severance of the unity of title, because the debtors owned both 250 and 110 Dogwood Court at the time of the foreclosure. As discussed more fully below, the plaintiff's conclusion is flawed because it (a) focuses on the wrong point in time (the date of the foreclosure rather than the date of Countrywide's deed of trust), and (b) ignores the fact that it was the trustee under the Countrywide deed of trust, not the debtors, who transferred 250 Dogwood Court following the foreclosure, and that trustee held no interest in 110 Dogwood Court at that time. By applying the implied easement doctrine on the date of the foreclosure, the plaintiff runs afoul of settled Tennessee law that the title to property conveyed at foreclosure is, with few exceptions not relevant here, the title transferred by the debtors to the deed of trust trustee as it existed when the

deed of trust was executed. By ignoring the fact that it was the deed of trust trustee rather than the debtors who transferred 250 Dogwood Court, the plaintiff infers an intention to reserve an easement on behalf of persons who were not parties to the conveyance. The doctrine of implied easements does not recognize such an inference.

*A. There Was No Unity of Title to 250 and 110 Dogwood Court that Was Severed upon the Foreclosure of 250 Dogwood Court.*

The plaintiff first maintains that the debtors were the real "owners" of 250 and 110 Dogwood Court at the time of the foreclosure and that their ownership interest was severed by the foreclosure.[2] However, the debtors were not the sellers of 250 Dogwood Court following the foreclosure. Tennessee is a title theory state and, consequently, the trustee under Countrywide's deed of trust and not the debtors held legal title to 250 Dogwood Court. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). The deed of trust trustee transferred his legal title to the property to FNMA with the execution and delivery of the February 12, 2015, trustee's deed. Neither Countrywide

---

[2] In fact, the plaintiff asserts that Mr. Candler stipulated that the unity of title held by the debtors was severed upon foreclosure. While the defendants did take that position in connection with their motion for summary judgment (Defs.' Statement of Material Facts as to Which There Exists No Genuine Issue to Be Tried ¶ 6), the parties did not join in any stipulations of fact and, in any event, the court's conclusion is one of law, based on undisputed facts, including that the debtors did not sell 250 Dogwood Court to FNMA or Mr. Candler and that neither the deed of trust trustee, the seller of 250 Dogwood Court following foreclosure, nor the mortgagee held an interest in 110 Dogwood Court. Further, Mr. Candler also contended that any implied easement that arose upon the foreclosure was extinguished by the foreclosure. (Defs.' Brief in Supp. of Defs.' Mot. for Sum. J., at 13-14.) The court's holding that no implied easement arose upon the foreclosure is premised, in part, on the fact that the title transferred was the title to 250 Dogwood Court as it existed when Countrywide's deed of trust was executed, free of any subsequently arising quasi-easement. Mr. Candler's argument is simply the flip side of the court's holding.

nor its trustee held any interest in 110 Dogwood Court that could have been severed with the transfer of 250 Dogwood Court. Prior to the foreclosure the debtors held the equity of redemption, the right to redeem the legal title to the property by satisfying the debt secured by the deed of trust. *Id.* Because they were not parties to the trustee's deed, the debtors' equitable title to 250 Dogwood Court was not transferred to FNMA, thereby severing their equitable title to both 250 and 110 Dogwood Court. Rather than severing the debtors' equitable title to these properties, the foreclosure extinguished the debtors' equitable title to or equity of redemption in 250 Dogwood Court. *Swift v. Kirby*, 737 S.W.2d 271, 276 (Tenn. 1987) (defining the meaning of "equity of redemption" as the right of the mortgagor to redeem property prior to "consummation of a foreclosure sale.") Thus, the "unity of title" requirement of an implied easement is, as a matter of law, lacking.

    The plaintiff argues that by relying on Tennessee being a title theory state the court is elevating form over substance. He suggests that, if the court is correct, only the mortgagee may sell encumbered property. This conclusion is unwarranted by the court's narrow holding. In Tennessee a mortgagor is the owner of the equitable title to or equity of redemption in real property with the right to use and enjoy the property. *Polston v. Scandlyn*, 108 S.W.2d 1104, 1107 (Tenn. Ct. App. 1937). In fact, Countrywide's deed of trust expressly obligated the debtors to use and occupy 250 Dogwood Court. The court acknowledges that a mortgagor may transfer his or her equitable interest in property by execution and delivery of a deed. Nothing in the court's opinion suggests otherwise. Of course, assuming the deed of trust is duly recorded, the transferee would own only what the transferor had to convey, i.e., the equitable title to the

property. The transferee's ownership would be subject to the rights and interests of the trustee and mortgagee under the recorded deed of trust who, respectively, hold the legal title to and a lien on the property. *Id.* The transferee of the mortgagor's equitable title could obtain the legal title free of the mortgagee's lien only by redeeming the property with the satisfaction of the debt secured by the deed of trust. *Thompson v. Bank of Am., N.A.*, 773 F.3d at 750. The plaintiff's suggestions to the contrary notwithstanding, the court's opinion is narrow and would not affect how real estate transactions are conducted in Tennessee.[3]

The court's reliance on the fact that Tennessee is a title theory state effectuates the policy behind Tennessee mortgage law, not merely the strictures of form. The Tennessee Supreme Court has held that "in practice the doctrine [that the mortgagee takes the legal title] is only applied when necessary to protect the mortgagee's security afforded by the estate." *Lieberman, Loveman & Cohn v. Knight*, 283 S.W. at 453. That is precisely what this court has done – protect the mortgagee's security. The deed of trust trustee received legal title to 250 Dogwood Court under Countrywide's deed of trust. When he sold the property at foreclosure to FNMA, he transferred the legal title as it existed at the time the debtors signed the deed of trust. That is why Tennessee law recognizes that junior interests, including easements, are extinguished upon foreclo-

---

[3] In support of his contention that, despite the fact that Tennessee is a title theory state, the mortgagor is treated as the real owner of property, the plaintiff relies upon *Lieberman, Loveman & Cohn v. Knight*, 283 S.W. 450 (Tenn. 1925), and also *Boellin-Harrison Co. V. Keeble*, 14 Tenn. App. 347 (1931). SouthEast Bank cites many other authorities to support the plaintiff's contention. (Br. in Supp. of Trustee's Mot. To Reconsider, at 6-9.) Neither of the plaintiff's cases and none of the authorities cited by SouthEast Bank concerned the doctrine of implied easements and how it intersects with Tennessee law governing mortgages.

sure, i.e., a foreclosure transfers the legal title as it existed when the deed of trust was executed, so generally junior interests created or arising thereafter may not cloud the title conveyed by the deed of trust. *Helmboldt v. Jugan*, No. E 2015-01664-COA-R3-CV, 2016 WL 4036417, at *3 (Tenn. Ct. App. July 25, 2016); *Minton v. Long*, 19 S.W.3d 231, 234 (Tenn. Ct. App. 1999); *Bush v. Duff*, 754 P.2d 159, 164 (Wyo. 1988), *overruled on other grounds by Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 290 (Wyo. 1991); *Kling v. Ghilarducci*, 121 N.E.2d 752, 756-757 (Ill. 1954) (applying the law of Illinois, then a title theory state,[4] the court held that an implied easement arising after execution of the mortgage was extinguished because the title to the property conveyed at foreclosure was the title existing upon execution of the mortgage). With few exceptions not relevant to this proceeding,[5] potential bidders at foreclosure sales in Tennessee must be entitled to rely on the title to the property as it existed on the date of the execution and recording of the deed of trust. Otherwise, the bids at foreclosure sales would be chilled, thereby impairing the ability of mortgage lenders to receive the value of their bargained for collateral. If, when applying both the law governing mortgage foreclosures and the law of implied easements, the temporal focus were on the date of the foreclosure sale, a mortgagee would always be at risk that the title to its collateral may be clouded by the actions of the mortgagor occurring subsequent to the execution of the

---

[4] Thirty years after *Kling* was decided, Illinois adopted the lien theory of mortgages. *See Scott v O'Grady*, 760 F. Supp. 1288, 1297 (N.D. Ill. 1991).

[5] Such exceptions would include liens for real property taxes accruing after the execution of the deed of trust which are made superior to the deed of trust by statute, Tenn. Code Ann. § 67-5-2101(a) (property taxes "shall become and remain a first lien upon such property"), and post-deed of trust encumbrances to which the mortgagee expressly subordinates or otherwise consents.

deed of trust. FNMA acquired and later transferred to Mr. Candler the title to 250 Dogwood Court as it existed when the deed of trust was executed in 2002, free of any inchoate, quasi implied easement that may have otherwise arisen while the debtors held equitable title to both 250 and 110 Dogwood Court after June 23, 2004, the date they acquired 110 Dogwood Court.

The rationale underlying the implied easement doctrine is similarly not served by finding that the unity of title to 250 and 110 Dogwood Court was severed by the foreclosure. "Implied easements [arising from prior use] are grounded in the policy 'that a **grantor intends** to include in a conveyance whatever is necessary for the beneficial use and enjoyment of the property conveyed." *Cellco P'ship v. Shelby County*, 172 S.W.3d 574, 589 (Tenn. Ct. App. 2005) (citation omitted) (emphasis added). "'A common law way of necessity [or implied easement of necessity] is a type of easement by implication and rests on the implication that the **parties intended and agreed** to provide for such a way.'" *Id.* at 591 (citation omitted) (emphasis added). Again, the trustee under the Countrywide deed of trust – not the debtors – transferred 250 Dogwood Court to FNMA following the foreclosure. Neither the mortgagee nor its trustee utilized 250 Dogwood Court to access 110 Dogwood Court. It may not be inferred that the mortgagee or its trustee intended to grant an easement over 250 Dogwood Court for the benefit of property in which neither held an interest. Had the debtors transferred their equitable interest in the property to FNMA or Mr. Candler, an implied easement from prior use or by necessity subordinate to Countrywide's deed of trust may have arisen for the benefit of 110 Dogwood Court through 250 Dogwood Court. However, because they

were not the grantors or parties to the actual transfer at issue, any possible inferred intent on the part of the debtors to reserve an easement for the benefit of 110 Dogwood Court is irrelevant.

For the first time, the plaintiff cites a number of out-of-state decisions in support of his position that an implied easement was created with the foreclosure of 250 Dogwood Court. As discussed immediately below, all these cases are either factually distinguishable or fail to address the intersection of the law of mortgages and the doctrine of implied easements.[6]

In *Myers v. LaCasse*, 838 A.2d 50, 56 (Vt. 2003), it was undisputed that a way of necessity existed over Parcel I for the benefit of a completely landlocked Parcel II. The question before the court was whether the foreclosure of a mortgage encumbering Parcel I, existing prior to the creation of the easement, extinguished the easement. Importantly, when the mortgage was placed on Parcel I, both parcels were owned by the mortgagor. *Id.* at 52. The court affirmed the trial court's decision and found that the easement was not junior to the mortgage and, therefore, not subject to foreclosure. *Id.* at 56. In so holding the Vermont Supreme Court relied on the fact that, "**when the mortgagee took its mortgage** covering only a part of the mortgagor's adjacent property, it must be charged 'with foresight of a potential way of necessity in the event a foreclosure

---

[6] The court is not holding that an implied easement may never arise upon a foreclosure. It is holding only that an implied easement was not created by the foreclosure conducted in this case. The result may have been different had Countrywide's deed of trust encumbered both 250 and 110 Dogwood Court. Under such circumstances, the doctrine of implied easements may have had application because it may have been inferred that the deed of trust trustee, holding unity of title over both tracts when he transferred 250 Dogwood Court to FNMA, intended to reserve an easement for the benefit of 110 Dogwood Court.

eventually resulted in a severance of the two parcels.'" *Id.* at 58 (emphasis added). The plaintiff in this proceeding contends that, **at the time of the foreclosure** on 250 Dogwood Court, "a reasonable inquiry would have shown that its only road access was through the mortgaged property" (Br. in Supp. of Mot. to Reconsider, at 3), while the *Myers* court correctly focused on whether the mortgagee at the time of the execution of the mortgage had actual or constructive notice of the potential necessity of an easement if a foreclosure were to sever the mortgagor's interest in the two parcels. Again, the plaintiff's focus is on the wrong point in time. The rights conveyed at foreclosure and now held by Mr. Candler are the rights that the debtors transferred to Countrywide's trustee when the deed of trust was executed. At that time the debtors, unlike the mortgagor in *Myers*, did not own 110 Dogwood Court. At that time Countrywide, unlike the mortgagee in *Myers*, could not have been on notice that a future foreclosure would leave the debtors without access to property that they did not yet own. Further, if Countrywide's representatives had any reason to conduct a records search regarding 110 Dogwood Court and reviewed the Lakewood Village plat and inspected that property, all they could have noted was that the property had access to a public way as it fronts Dogwood Court. 110 Dogwood Court, unlike the dominant tenement in *Myers,* is clearly not landlocked.[7]

---

[7] If this court were called upon to apply Tennessee law to the facts presented in *Myers*, it might reach the same result but through a different analysis. This court would likely not find that the foreclosure did not extinguish the implied easement because the mortgagee, at the time of the execution of the mortgage, could have potentially foreseen a need for an easement of necessity upon a later foreclosure. Instead, this court might conclude that the execution of a deed of trust encumbering only Parcel I worked to sever the unity of ownership held by the mortgagor in both parcels and precipitated the
(continued...)

The plaintiff also relies upon *Puget Sound Mutual Savings Bank v. Lillions*, 314 P.2d 935 (Wash. 1957), *Traders, Inc. V. Bartholomew*, 459 A.2d 974 (Vt. 1983), and *Bays v. Haven*, 777 P.2d 562 (Wash. Ct. App. 1989). These cases generally stand for the proposition that an easement by necessity may arise upon the foreclosure of either a dominant or servient tenement. In each of these cases, the mortgagor owned both the dominant and servient tenements at the time the mortgage was executed. Accordingly, as in *Myers*, the mortgagees in these cases "must be charged 'with foresight of a potential way of necessity in the event a foreclosure eventually resulted in a severance of the two parcels.'" *Myers v. LaCasse*, 838 A.2d at 58. Again, in the present proceeding, the debtors did not own 110 Dogwood Court at the time Countrywide's deed of trust encumbering 250 Dogwood Court was executed. They did not have unity of ownership in 250 and 110 Dogwood Court that could be severed with the execution of the deed of trust encumbering only 250 Dogwood Court. Thus, the plaintiff does not contend that an implied easement was created at that time that was superior to the deed of trust. Nor does the plaintiff contend that, at the time of the execution of the deed of trust, Countrywide should be charged with actual or constructive notice of a potential easement by necessity in the event of a foreclosure for the benefit of property its mortgagors did not yet own.

In *Essex Ventures, LLP v. Samuel*, 154 F. Supp. 3d 1080 (D. Mont. 2015), the court, applying Montana law, granted the plaintiff's motion for summary judgment finding

---

[7] (...continued)
creation of an implied easement for the benefit of the landlocked Parcel II. In other words, the deed of trust trustee's legal title to Parcel I would have been subject to an implied easement that arose upon the execution of the deed of trust.

an implied easement for the benefit of the "Riverside Lot" owned by the plaintiff over the "Exhibit C. Properties" owned by the defendant. The court found that unity of ownership of the tracts was severed at the time of foreclosure of the Exhibit C. Properties. *Id.* at 1084. However, Montana is a lien theory state, *id.* at 1087, and that was the court's basis for distinguishing *Leonard v. Bailwitz*, 166 A.2d 451 (Conn. 1960), since Connecticut is a title theory state. Because Tennessee is a title theory state, this court follows *Leonard v. Bailwitz*, not *Essex Ventures*. Furthermore, the property at issue in *Essex Ventures* was landlocked and 110 Dogwood Court is not.

In *Larsson v. Grabach*, 18 Cal. Rptr. 3d 136, 138 (Cal. Ct. App. 2004), the court held "that an easement by implication can be created when the owner of real property dies intestate and the property is then divided and distributed to the intestate's heirs by court decree." However, unlike the present proceeding, that decision did not involve property rights acquired at a foreclosure or concern the intersection of the law of implied easements and the law of mortgages. The dominant tenement in *Larsson* was also landlocked, unlike 110 Dogwood Court.

B. *Assuming an Implied Easement Arose upon the Foreclosure of 250 Dogwood Court, It Was Extinguished by the Foreclosure.*

The plaintiff next contends that implied easements arise by operation of law and cannot be extinguished as long as the necessity exists, relying on *Peach v. Medlin*, No. W2003-02152-COA-R3-CV, 2004 WL 948481 (Tenn. Ct. App. Apr. 28, 2004), *Morris v. Simmons*, 909 S.W.2d 441 (Tenn. Ct. App. 1993), and *McCammon v. Akers*, 436 S.W.2d 457 (Tenn. Ct. App. 1968). The court agrees that implied easements arise by operation of law. However, as discussed at length above, because there was no unity of

title that was severed by the foreclosure in this case, no implied easement was created by the foreclosure on 250 Dogwood Court.

Even if the court were to conclude that an implied easement arose subsequent to the debtors' execution of Countrywide's deed of trust, the cases relied on by the plaintiff do not stand for the legal proposition that the foreclosure under Countrywide's deed of trust would not extinguish the junior implied easement. The cited cases did not involve a foreclosure and, accordingly, did not require the courts to reconcile the doctrine of implied easements with the law of mortgages. Again, it is well settled in Tennessee that a foreclosure extinguishes interests in property, including easements, junior to the deed of trust.

The plaintiff contends that the court's reliance on *Bush v. Duff* is misplaced. There, the Wyoming Supreme Court held that an implied easement of necessity was extinguished by the foreclosure of a mortgage antedating the creation of the implied easement. *Bush v. Duff*, 754 P.2d 159, 164 (Wyo. 1988). The plaintiff contends that the courts of Tennessee would not follow the reasoning of *Bush* because in Tennessee easements by necessity are extinguished only when the necessity ceases. (Br. in Supp. of Mot. to Reconsider, at 4-5.) The plaintiff overlooks the fact that the Tennessee Court of Appeals, in holding that a foreclosure under a deed of trust extinguished an express easement that was junior to the deed of trust, cited *Bush*'s reasoning with approval. *Minton v. Long*, 19 S.W.3d 231, 234 (Tenn. Ct. App. 1999). What seems unlikely is that a Tennessee court, recognizing that an express easement is extinguished by the foreclosure of an antecedent deed of

trust, would nevertheless hold that an implied easement is created by the same foreclosure for the benefit of property in which the mortgagee holds no interest.

 The hypothetical posed by the plaintiff serves to highlight the fact that his position fails to properly account for the rights of a mortgagee and its successors in interest under Tennessee law. He asks the court to assume that the debtors transferred 110 Dogwood Court to a third party in 2010 and that the debtors granted the purchaser an express easement over 250 Dogwood Court for egress and ingress and for utility service. In the hypothetical, Countrywide apparently did not agree to subordinate its deed of trust to the express easement because the plaintiff acknowledges that the subsequent foreclosure on 250 Dogwood Court would extinguish the express easement. He nevertheless concludes that an implied easement of necessity would arise upon the termination of the express easement and survive the foreclosure. Again, because the deed of trust trustee did not have any interest in 110 Dogwood Court, there was no unity of title that could give rise to an implied easement and FNMA obtained legal title to 250 Dogwood Court as it existed at the time of the execution of the deed of trust, free of any easement – express or implied – arising subsequent to the deed of trust. Following the foreclosure, the purchaser of 110 Dogwood Court in the plaintiff's hypothetical, like the bankruptcy estate in this case, would be left with no rights over 250 Dogwood Court. There is nothing inequitable or unjust about this outcome. The hypothetical purchaser, like the debtors and SouthEast Bank in the present proceeding, were in the best position to protect their interests in 110 Dogwood Court when they acquired those interests. At that time, they could and should have evaluated the property's accessability and the

availability of utility service. By then, the debtors had already acquired 250 Dogwood Court and Countrywide's deed of trust was of public record so, if access through 250 Dogwood Court was necessary for the use and enjoyment of 110 Dogwood Court, they could have requested that Countrywide subordinate its deed of trust to an easement through 250 Dogwood Court. If Countrywide refused, then the hypothetical purchasers and their mortgagee, the debtors and Southeast Bank, could have taken that into account in deciding, respectively, how much to pay for 110 Dogwood Court and whether to underwrite the loan secured by that property.

Finally, to the extent the court's decision leaves "no adequate and convenient outlet from [110 Dogwood Court] to a public road," Tennessee law affords a "right to have an easement or right-of-way condemned and set aside" for the benefit of 110 Dogwood Court. Tenn. Code Ann. § 54-14-102. Thus, the court's decision does not leave 110 Dogwood Court unusable.

For the foregoing reasons, the court will enter an order denying the plaintiff's Motion to Reconsider.

###